Affirmed and Memorandum Opinion filed April 11, 2006









Affirmed
and Memorandum Opinion filed April 11, 2006.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-04-01019-CR

____________

 

PAUL BERRY, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 174th
District Court

Harris County, Texas

Trial Court Cause No. 1001030

 



 

M E M O R A N D U M   O P I N I O N

Appellant, Paul Berry, was convicted by a
jury of robbery and sentenced by the trial court to 25 years in the Texas
Department of Criminal Justice, Institutional Division.  In his sole issue on appeal, appellant
complains the trial court erred in permitting the State to impeach his
testimony with evidence of prior felony convictions.  We affirm. 









                                                  Background

On December 28,
2003, Segun Ayeniko was working the noon to midnight shift at the National Mini
Mart on Cullen Boulevard in Southeast Houston. 
At 6:00 p.m., Ayeniko noticed appellant and a female companion, Theodora
Hunter, enter the store.  Appellant asked
why Ayeniko was looking and pointing at him and said AI=m not here to do
any stealing or anything.@ 
Ayeniko told appellant he was sorry and said he was not looking at
him.  Appellant brought beers from the
beer cooler to the counter and asked for three different brands of cigarettes.  Ayeniko put the cigarette cartons on the
counter and rang them up with the beer. 
The total price of the items was more than $100.  

Ayeniko put the items in a bag.  Appellant checked his pockets and said his
money should be in the car and asked Hunter to check the car for the
money.  After going out to the car,
Hunter returned and said there was no money in the car.  Appellant then left the store stating the
money was in the car.  When appellant
came back in, he did not have the money. 
When Ayeniko told him he needed the money, appellant said AI already gave you
$200.@  Ayeniko told appellant he had not given him
the money.  Ayeniko called the police and
appellant grabbed the bags off the counter, giving two of the bags to Hunter
while he kept the last bag.  

When Ayeniko saw appellant and Hunter
leaving, he dropped the phone and ran after appellant.  Appellant hit Ayeniko in the neck with a
closed fist.  Ayeniko fell back, but
struggled back up and grabbed appellant=s shirt.  Appellant and Ayeniko got into a scuffle and
tore each other=s shirts. 
When Ayeniko realized appellant was more powerful than he, he let go of
appellant.  Appellant went to his car
with Ayeniko following him.  Hunter had
put the bags inside the car and was standing by the car.  When appellant tried to get into the car,
Ayeniko closed the car door.  








Appellant ran back into the store with
Ayeniko in pursuit.  Appellant threw a
plastic gallon-sized milk jug at Ayeniko, hitting him in the head.  The top of the jug broke off and milk
splashed over Ayeniko and the floor. 
Appellant chased Ayeniko down the aisles and threatened to hurt him if
he did not leave him alone.  Appellant
picked up 40-ounce beer bottles from the cooler and started throwing them at
Ayeniko.  The first bottle hit Ayeniko
and the others broke on the floor. 
Ayeniko=s leg was cut by broken glass.  Appellant left the store with Ayeniko in
pursuit.  The police arrived soon
thereafter.  

Officers Kyle Drey and Jon Thornburg of
the Houston Police Department received a dispatch call to a gas station on the
corner of Cullen and Yellowstone.  As the
officers approached the intersection, they saw two people fighting in the
parking lot of the gas station.  The
officers separated and detained appellant and Ayeniko.  Appellant told Officer Drey that he had paid
for his items, but Ayeniko refused to give him change.  Appellant=s car was found
across the street with Hunter sitting in it. 
Officer Drey directed Hunter back to the gas station.  A bag containing beer and cigarettes was also
in the car.

Appellant testified he picked up two
six-packs of beer, some wine, cold cut meat, and chips and took these items to
the counter.  Ayeniko told him he owed
$105.44.  Appellant testified he gave
Ayeniko two $100 bills to pay for the items. 
Appellant, however, then asked Ayeniko to wait because he might have
enough change in his car so that he would not have to break the second $100
bill.  Hunter went to the car while
appellant remained in the store.  Hunter
brought in appellant=s bag from the car.  It had $2 and 20 cents in change.  Appellant told Ayeniko to take the two $100
bills because he did not have the enough change to cover the $5.44.  Ayeniko then said appellant had not given him
any money.  They started fighting and
appellant admitted that he threw the milk jug at Ayeniko.  Appellant claims Ayeniko gave Hunter
permission to put the bags in the car because the counter was cluttered up with
the items he and Hunter were buying.

The officers had Ayeniko Acount the till
down,@ i.e., check the
amount of money in the cash register at that time compared to the amount of
sales brought in and the amount that should have been in the register.  All the money in the cash register was
accounted for.  








                                          Impeachment Evidence

In his sole point of error on appeal,
appellant asserts the trial court erred in permitting the State to impeach his
testimony with evidence of his prior felony convictions.  On cross-examination, appellant testified he
was convicted of (1) unauthorized use of a motor vehicle on June 13, 1996, (2)
burglary of a building in 1997, (3) robbery on March 11, 1999, (4) delivery of
a controlled substance on March 29, 1999, and (5) robbery on September 28,
2001.  

A complaint on appeal cannot vary from the
objection made at trial.  Heidelberg
v. State, 144 S.W.3d 535, 537 (Tex. Crim. App. 2004).  At trial, appellant moved to exclude only his
two prior convictions for robbery, not any of his other convictions.[1]  Therefore, appellant has waived any complaint
on appeal about the admission of his prior convictions for unauthorized use of
a motor vehicle, burglary, and delivery of a controlled substance.  Accordingly, we shall address appellant=s complaint in the
context of his two prior convictions for robbery.  

We review a trial court=s evidentiary
rulings under an abuse of discretion standard. 
Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  As long as the trial court's evidentiary
ruling was at least within the zone of reasonable disagreement, an appellate
court may not disturb it.  Montgomery
v. State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990). 

Rule 609 of the Texas Rules of Evidence provides for
impeachment evidence:








For the purpose of attacking the credibility of a witness,
evidence that the witness has been convicted of a crime shall be admitted if
elicited from the witness or established by public record but only if the crime
was a felony or involved moral turpitude, regardless of punishment, and the
court determines that the probative value of admitting this evidence outweighs
its prejudicial effect to a party.

Tex. R. Evid.
609(a).  

Prior to admitting impeachment evidence
against the defendant, the trial court must find the probative value of such
evidence outweighs its prejudicial effect. 
Theus v. State, 845 S.W.2d 874, 880 (Tex. Crim. App. 1992).  There are a number of factors relevant to
weighing the probative value of a conviction against its prejudicial effect,
including (1) the impeachment value of the prior crime, (2) the temporal
proximity of the past crime relative to the charged offense and the witness= subsequent
history, (3) the similarity between the past crime and the offense being
prosecuted, (4) the importance of the defendant=s testimony, and
(5) the importance of the credibility issue. 
Id.  Because some of the
factors cut in different directions, these factors are not applied with
mathematical precision.  Id.  

With respect to the first factor, i.e.,
the impeachment value of the prior crime, the impeachment value of crimes
involving deception is higher than for crimes involving violence, which have
the higher potential for prejudice.  Id.
at 881.  When a party seeks to impeach a
witness with evidence of a crime that relates more to deception than not, the
first factor weighs in favor of admission. 
Id.  








Appellant argues the first factor weighs
against admission because the convictions used by the State were, for the most
part, crimes of violence, which have a higher potential for prejudice.  Appellant does not limit his argument only to
his prior robbery convictions.  As
addressed above, we shall only address his complaint as it concerns his two
prior robbery convictions.  While robbery
is clearly dishonest and involves the threat or use of violence, it is not clear
whether it necessarily includes the element of deception.  Simpson v. State, 886 S.W.2d 449, 452
(Tex. App.CHouston [1st Dist.] 1994, pet. ref=d).  Thus, the first factor favors neither
admitting nor excluding the prior robbery convictions.  See Davis v. State, No.
14-94-01205-CR, 1997 WL 295591, at *4 (Tex. App.CHouston [14th
Dist.] June 5, 1997, pet. ref=d) (not designated
for publication) (stating that because it is unclear whether robbery
necessarily involves an element of deception, the first factor favors neither
party).  

The second factor, i.e., the temporal
proximity of the past crime relative to the charged offense, will favor
admission if the past crime is recent and if the witness has demonstrated a
propensity for running afoul of the law. 
Theus, 845 S.W.2d at 881. 
Appellant concedes the second factor weighs in favor of admissibility
because his convictions, including his robbery convictions, were less than ten
years old.  Both robbery convictions were
within six years of appellant=s testifying at
his trial and within five years of his committing the charged offense.  Thus, the second factor favors the admission
of his prior robbery convictions.  

The third factor, i.e., the similarity
between the past crime and the offense being prosecuted, will militate against
admission if the past crime and the charged crime are similar.  Id. 
The admission for impeachment purposes of a crime similar to the crime
charged runs the risk of the jury convicting on the perception of a past
pattern of conduct rather than on the facts of the charged crime.  Id. 
The current offense is for robbery and the two convictions subject to
this appeal were also for robbery. 
Appellant argues the third factor weighs against admission and the State
similarly concedes that the third factor weighs against admission of the prior
robbery convictions.  

The fourth and fifth factors, i.e., the
importance of the defendant=s testimony and
the importance of the credibility issue, depend on the nature of the defendant=s defense and the
means available to him of proving his defense. 
Id.  For example, when the
defendant presents an alibi defense and can call other witnesses, the defendant=s credibility is
not likely to be a critical issue.  Id.  Indeed, the defendant may not need to testify
because other witnesses will testify in his defense.  Id. 
However, when the case involves the testimony of only the defendant and
the State=s witnesses, the importance of the
defendant=s credibility escalates, as will the State=s need for an
opportunity to impeach the defendant=s
credibility.  Id.  








Appellant argues the fourth and fifth
factors cancel each other out.  Because
appellant was the only witness to testify in his defense, the fourth factor
weighs against admission.  Because
credibility was central to determining the factual conflicts between testimony,
the fifth factor weighs in favor of admission. 
We disagree.  Appellant and
Ayeniko, the only two testifying witnesses to the offense, described competing
versions of the offense.  Appellant
testified that he gave Ayeniko $200 for the beer and cigarettes, while Ayeniko
testified that appellant never gave him any money.  Therefore, appellant=s credibility was
important to his defense and the State had a significant need to impeach his
testimony.  Accordingly, the fourth and
fifth factors weigh in favor of the admission of the prior convictions for
robbery.

Appellant argues the comparative analysis
of the overall weight of the evidence weighs against admission and, therefore,
the trial court abused its discretion by admitting evidence of his prior
convictions for impeachment under Rule 609(a). 
Three factors weigh in favor of admission, one factor weighs against
admission, and one factor does not favor either admission or exclusion of the
prior robbery conviction.  Because the
admission of the prior robbery convictions falls within the zone of reasonable
disagreement, we conclude the trial court did not abuse its discretion.  As set forth below, even if the trial court
erred in admitting the prior robbery convictions, we do not believe such error
warrants reversal.  

                                                  Harm Analysis








Any nonconstitutional error Athat does not
affect substantial rights must be disregarded.@  Tex.
R. App. P. 44.2(b).  Substantial
rights are not affected by the erroneous admission of evidence if Athe appellate
court, after examining the record as a whole, has fair assurance that the error
did not influence the jury, or had but a slight effect.@  Johnson v. State, 967 S.W.2d 410, 417
(Tex. Crim. App. 1998).  In determining whether
the jury=s decision was
adversely affected by the error, the reviewing court should consider everything
in the record, including any testimony or physical evidence admitted for the
jury=s consideration,
the nature of the evidence supporting the verdict, the character of the alleged
error, and how it might be considered in connection with other evidence in the
case.  Motilla v. State, 78 S.W.3d
352, 355 (Tex. Crim. App. 2002).  The
appellate court may also consider the jury instructions, the State=s theory and any
defensive theories, closing arguments, voir dire, if applicable, and whether
the State emphasized the error.  Id.
at 355B56.  Finally, evidence of the defendant=s guilt is a
factor to be considered in any Rule 44.2(b) harm analysis.  Id. at 358, 360.  

Appellant argues that by emphasizing his prior convictions,
the State used that evidence to discredit his version of the events as compared
to Ayeniko=s version. 
Therefore, according to appellant, the error in the admission of his
prior convictions had more than a slight effect on the jury=s verdict.  The prosecutor argued, in relevant part: 

The other thing is that he=s a five-time convicted felon.

                                                     *        *       
*

You basically have the complaining
witness= story, a person that has no reason
to lie to you. . . . And on the other hand, you have Paul Berry, who has every
reason in the world to lie to you.  You
know he=s good at lying.

Look at his deceitful history.  Unauthorized use of a motor vehicle, burglary
of a building, robbery, robbery.  And you
know he has another real good reason to lie to you, because he admitted it up
there that he knows what the effect of admitting the truth will have on him.  He=s on parole.  He knows
what that can mean for him.

                                                     *        *       
*

So, you have the testimony of a
five-time convicted felon against Segun Ayeniko=s testimony. . . . They kept this
five-time convicted felon from escaping this robbery.

                                                     *        *       
*

. . . The cops did everything that they could to stop him,
to stop five-time convicted felon from getting away with robbery.








Appellant complains of the prosecutor=s referring to him
as a Afive-time
convicted felon.@ 
However, three of appellant=s prior
convictions, i.e., unauthorized use of a motor vehicle, burglary of a building,
and delivery of a controlled substance, were admitted without objection.  Of those prior convictions, burglary is a
crime involving deception and has high impeachment value.  White v. State, 21 S.W.3d 642, 647
(Tex. App.CWaco 2000, pet. ref=d).  Also, in his closing argument, the prosecutor
emphasized the reasons Ayeniko had no motive to lie about appellant=s not paying for
the beer and cigarettes.[2]  Furthermore, only the fact of the convictions
was in evidence.  There was no testimony
about the details of the prior offenses. 
Moreover, the trial court=s charge
instructed the jury that evidence of appellant=s prior
convictions could not be considered as evidence of guilt in the current case,
but only as an aid in determining the weight to be given his testimony.[3]  We must presume the jury followed the trial
court=s charge.  Gamez v. State, 737 S.W.2d 315, 324
(Tex. Crim. App. 1987).  

Finally, while Ayeniko and appellant
testified as to competing versions of the events, i.e., whether appellant gave
Ayeniko two $100 bills, other evidence, including the fact that beer and
cigarettes from the store that were found in appellant=s car and the fact
that no unaccounted for money was found in the cash register, support the jury=s finding of
guilt.  We conclude the admission of
appellant=s two prior robbery convictions did not
influence the jury or had only a slight effect. 
Appellant=s point of error is overruled.








Accordingly, the judgment of the trial
court is affirmed.  

 

 

 

 

 

/s/      J. Harvey Hudson

Justice

 

 

 

 

Judgment
rendered and Memorandum Opinion filed April 11, 2006.

Panel
consists of Justices Hudson, Frost, and Seymore.

Do
Not Publish C Tex.
R. App. P. 47.2(b).











[1]  Appellant=s counsel argued, in relevant part:

Your
Honor, I do have a Theus motion regarding the defendant=s prior convictions for robbery, Your Honor. .
. . And we=d respectfully request that Mr. Berry be afforded the
opportunity to testify free at the guilt/innocence stage of the trial of his
prior convictions, Your Honor, for robbery.  

Emphasis added.





[2]  With regard to
Ayeniko, the prosecutor argued:

[Ayeniko]
has no motive to come in here and tell you anything but the truth.  It=s a
hard-working man trying to go to school. 
He=s missing a day of work to come down here and
testify.  He lost business on the day
that he had to call the police.





[3]  The instructions to the jury
provide, in relevant part:

You are instructed that certain evidence was
admitted before you in regard to the defendant=s having been charged and convicted
of an offense or offenses other than the one for which he is now on trial.  Such evidence cannot be considered by you
against the defendant as any evidence of guilt in this case.  Said evidence was admitted before you for the
purpose of aiding you, if it does aid you, in passing upon the weight you will
give his testimony, and you will not consider the same for any other purpose.