In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-11-00051-CR

                                                ______________________________

 

 

                        GREGORY MAURICE LIVINGSTON,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                      On Appeal from the 202nd
Judicial District Court

                                                             Bowie County, Texas

                                                       Trial Court
No. 10F0371-202

 

                                                    
                                              

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                              Memorandum Opinion by Justice Carter








                                                      MEMORANDUM OPINION

 

            Gregory Maurice
Livingston was convicted and assessed punishment by a jury for the felony offense
of burglary of a habitation.[1]  In accordance with the jury verdict,
Livingston was sentenced to twelve years’ imprisonment in the Texas Department
of Criminal Justice–Institutional Division. 
Livingston argues the trial court erred in two respects: (1) in allowing
the State to cross-examine him concerning an aggravated assault conviction; and
(2) in admitting evidence of his alleged witness tampering.  We affirm the judgment of the trial court. 

I.          Background

 

            Livingston was arrested for a
burglary committed during the afternoon hours of November 16, 2009.   The only witness to the burglary was Ryan
Leslie, who lived in the apartment adjoining that of Jacqulyn Jackson, from
which Livingston allegedly removed several items of value.   

            Around 2:00
p.m. on the afternoon in question, Livingston allegedly knocked on Leslie’s
door and asked if a man named “Pig” was there. 
Leslie denied knowing anyone by the name of “Pig,” and Leslie did not
know Livingston.  A few minutes after
Leslie’s brief conversation with Livingston, Leslie heard a commotion next door
in Jackson’s apartment.  When he looked
outside, Leslie saw the same man who had just minutes earlier knocked on his
door.  He saw the man, later identified
as Livingston, carrying a television from the back of Jackson’s apartment.  After Livingston put the television in the
trunk of a red four-door Cadillac, he got into the back seat of the car, and it
sped off.  Leslie was able to make a positive
identification of Livingston from a lineup as the man he saw loading a
television into the trunk of the red Cadillac. 

            Leslie
further testified that in February 2011, when Livingston’s case was initially
set for trial, he received a telephone call from an individual who identified
himself as Livingston.   Livingston
allegedly told Leslie that Leslie was going to court against Livingston the
following day and, “I want to fill your pockets full of money.”  Leslie reported the call to the district attorney’s
office and to the local police department.    


 II.     Analysis

 

            A.        Admission
of Prior Conviction

 

            Prior to taking the witness
stand to testify in his own defense, Livingston moved the court to permit him
to “testify free of his prior conviction in Arkansas pursuant to Rule 609.”  The trial court denied the request.[2]  Livingston contends the trial court erred in
ruling that he could not testify free from impeachment by evidence of a prior
conviction for aggravated assault.  The
State argues that the balancing test under Theus
weighs in favor of admission, and therefore, the trial court did not abuse its
discretion in permitting the contested cross-examination. 

            Trial
courts are afforded wide discretion in deciding whether to admit evidence of a
defendant’s prior conviction.  Theus, 845 S.W.2d at 881; Edwards v. State, 883 S.W.2d 692, 694
(Tex. App.—Texarkana 1994, pet. ref’d). 
When considering whether a trial court’s decision to admit or exclude
evidence is error, we apply an abuse of discretion standard.  McDonald
v. State, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005).  “A trial court abuses its discretion when its
decision is so clearly wrong as to lie outside that zone within which
reasonable persons might disagree.”  Id.

            Rule 609 of the Texas Rules of Evidence addresses
impeachment by evidence of conviction of a crime, and provides, in pertinent
part:

For the purpose of attacking the credibility of
a witness, evidence that the witness has been convicted of a crime shall be
admitted if elicited from the witness or established by public record but only
if the crime was a felony or involved moral turpitude, regardless of
punishment, and the court determines that the probative value of admitting this
evidence outweighs its prejudicial effect to a party.

 

Tex. R. Evid.
609(a).  Rule 609 requires that as a
prerequisite to admitting impeachment evidence against an accused, the trial
court must find that the probative value of such evidence outweighs its
prejudicial effect.  Theus, 845 S.W.2d at 879–80. 
Although not exclusive, the following factors should be considered:  (1) the impeachment value of a prior crime;
(2) the temporal proximity of the prior crime relative to the charged offense
and the defendant’s subsequent history; (3) the similarity between the prior offense
and the charged offense; and (4) the importance of the defendant’s testimony
and his or her credibility.  Id. at 880.  

            (1)        
Impeachment Value

 

             “The impeachment value of crimes that involve
deception is higher than crimes that involve violence, and the latter have a
higher potential for prejudice. . . .”  Id. at 881.  Livingston maintains this factor weighs
against admission of his prior aggravated assault conviction, given that it is
not a crime of moral turpitude and its violent nature creates a higher
potential for prejudice.  The State
concedes this first factor “weighs somewhat against admissibility.”  Although a felony, the offense of aggravated
assault would not typically involve deception or bear heavily against a witness’
veracity.  While “all felonies have some
probative value on the issue of credibility,”[3]
the impeachment value here generally weighs against admissibility.  

            (2)       Temporal Proximity    

 

            Livingston concedes that because
his prior conviction occurred approximately five years prior to the instant
offense, this factor favors admissibility.[4]  

            (3)       Similarity of Offenses

 

            When a defendant’s prior offense
and the charged offense are similar, a danger arises that the jury will convict
the defendant based on a perception of past conduct, rather than based on the
facts of the charged offense.  Therefore,
if the prior offense is similar to the charged offense, this weighs against
admission of the prior conviction.  Id. at 881.   Livingston concedes that aggravated assault
and burglary are not similar offenses, which weighs in favor of admission of
the prior conviction.  See, e.g., LaHood v. State, 171 S.W.3d
613, 621 (Tex. App.—Houston [14th Dist.] 2005, pet. ref’d) (aggravated
kidnapping and aggravated sexual assault are not similar to burglary).  

            (4)        Importance
of Defendant’s Testimony and Credibility

 

            The importance of the defendant’s
testimony and his or her credibility address the nature of the defense and the
means available to prove that defense.  Theus, 845 S.W.2d at 881.  “As the importance of the defendant’s
credibility escalates, so will the need to allow the State an opportunity to
impeach the defendant’s credibility.”  Id.  Livingston maintains that the credibility of
his testimony is not of critical import because, in addition to his testimony,
Monica Moton testified as an alibi witness for the defense.[5]  

            Livingston,
however, presented a second defense based on a prior relationship with Leslie,
the only witness to the burglary.  Leslie
testified that he did not know Livingston, and had never seen him prior to the
day of the offense.  To the contrary,
Livingston testified he knew Leslie, they frequently smoked marihuana together,
and Leslie owed Livingston an undisclosed amount of money.  After Livingston confronted Leslie about paying
the debt, Leslie became “really scared” of Livingston.  Livingston testified that he believes Leslie
leveled these accusations against him because it was the only way Leslie could “get
rid of” Livingston.  According to
Livingston, Leslie knows Livingston and he is familiar with Livingston’s
car.  

             Livingston was the sole witness in regard to
his relationship with Leslie.  This
testimony was characterized by counsel for Livingston as the “crux of our
defense.”  Livingston’s testimony and his
credibility were both important given his testimony that the sole witness to
the burglary had a motive to falsely accuse him.  These factors thus weigh in favor of
admission of Livingston’s prior conviction. 


            The trial
court did not abuse its discretion in permitting the State to impeach
Livingston with his prior aggravated assault conviction.  The Theus
factors favor admission of the conviction and Livingston’s credibility was
vital to his defense.  See Cuba v. State, 905 S.W.2d 729, 734
(Tex. App.—Texarkana 1995, no pet.) (court acted within its discretion in
determining that in trial for delivery of cocaine, probative value of defendant’s
prior conviction for aggravated assault outweighed prejudicial effect where
defendant’s credibility was vital to his defense).

            B.        Evidence
of Alleged Witness Tampering

 

            In his final point of error,
Livingston contends the trial court abused its discretion by admitting evidence
of Livingston’s alleged witness tampering. 
The trial court’s evidentiary ruling must be upheld as long as it is
within the zone of reasonable disagreement and is correct under any theory
applicable to the case.  Johnson v. State, 263 S.W.3d 405, 419
(Tex. App.—Waco 2008, pet. ref’d).  

            After
Livingston testified that he knew Leslie and that Leslie had a motive to
falsely accuse him, the State moved to cross-examine Livingston about certain
telephone calls he allegedly made to Leslie, offering Leslie money not to
testify against Livingston.  Livingston
objected to the requested cross-examination because evidence of alleged witness
tampering was not relevant, the testimony would be substantially more
prejudicial than probative, and the charges were still being investigated. 

             Livingston was then questioned outside the
presence of the jury regarding telephone calls he allegedly made to
Leslie.  Livingston denied calling Leslie
and denied offering to pay for favorable testimony.  The State informed the trial court that both
Leslie and the investigating officer were available to testify regarding the
alleged telephone calls.  The trial court
overruled Livingston’s Rule 403 objection and permitted Livingston to be
cross-examined about the alleged telephone calls.  See Tex. R. Evid. 403.  After Livingston denied making
telephone calls to Leslie, the trial court determined the State should be
permitted to offer extrinsic evidence of the alleged telephone calls under Rule
613 of the Texas Rules of Evidence.[6]


            Leslie
testified that he received a telephone call from a private number the night
before Livingston’s case was originally set for trial.  Leslie did not answer the call.[7]  The next morning, Leslie received a telephone
call from an individual who stated, “You’re going to court against me tomorrow
and I want to fill your pockets full of money.” 
The caller identified himself as Greg Livingston.  Leslie immediately reported the call to the district
attorney’s office and to the local police department.  

            Detective
Micah Brower of the Texarkana Police Department testified that he is the lead
investigator on Leslie’s report of witness tampering.  Leslie’s statement to Brower was that
Livingston offered him money to testify favorably for Livingston.  Brower subpoenaed Livingston’s telephone
records, but did not bring them to trial because they had not been fully
reviewed.  

            On appeal,
Livingston maintains that it is the nature
of the evidence—as opposed to the theory of admissibility—that is
objectionable.[8]  The evidence in question, concedes Livingston,
shows consciousness of guilt.  But, he
maintains, it is not reliable.    

            Livingston
points to the jury’s questions during deliberations as evidence of harm caused
by the admission of unreliable witness tampering evidence.  During deliberations, the jury requested the
opportunity to review the telephone records for the day in question, and
further requested information indicating when Livingston learned of the
identity of the witness.  Finally, the
jury wondered, “Why there were no witnesses or evidence or collaborating [sic]
parties included to prove these two parties (Greg L. & Ryan L.)  knew each other?”[9]
 Obviously, Livingston claims, the jury
had questions about whether Livingston and Leslie knew each other prior to the
incident in question, and the jury should not have been forced to rely on
unreliable evidence to arrive at its verdict.

            Livingston’s
complaint, at least in part, appears to be directed not to the admissibility of
the evidence, but to its weight.  The
jury is the sole judge of the credibility of the witnesses and the weight of
the evidence it receives.  Johnson v. State, 23 S.W.3d 1, 16 (Tex.
Crim. App. 2000), overruled on other
grounds by Brooks v. State, 323
S.W.3d 893, 912–13 (Tex. Crim. App. 2010). 
Accordingly, the jury was free to disregard the witness tampering
evidence if it believed such evidence was too weak or not credible.  It was also within the province of the jury
to believe the witness tampering evidence if it found such evidence to be credible.  

             To the extent Livingston’s complaint is based
on the notion that the witness tampering testimony was unfairly prejudicial,
his complaint implicates Rule 403.  Under
Rule 403 of the Texas Rules of Evidence, otherwise relevant evidence “may be
excluded if its probative value is substantially outweighed by the danger of
unfair prejudice, confusion of the issues, or misleading the jury, or by
considerations of undue delay, or needless presentation of cumulative evidence.”  Tex.
R. Evid. 403.  In determining
whether evidence is relevant, we look to the purpose for which the evidence was
offered and whether there is a direct or logical connection between the offered
evidence and the proposition sought to be proved.  Goodwin
v. State, 91 S.W.3d 912, 917 (Tex. App.—Fort Worth 2002, no pet.).  

            Because it
constituted evidence of Livingston’s consciousness of guilt, the witness
tampering testimony was highly relevant. 
See Johnson, 263 S.W.3d at 426 (evidence of witness
tampering is substantive evidence of guilt). 
“[A]n attempt to tamper with a witness is evidence of ‘consciousness of
guilt.’”  Wilson, 7 S.W.3d at 141.    

            Rule
403 favors admissibility of relevant evidence, and the presumption is that
relevant evidence will be more probative than prejudicial.  Taylor
v. State, 93 S.W.3d 487, 505 (Tex. App.—Texarkana 2002, pet. ref’d).  In order for this evidence to have been
unfairly prejudicial, it must have had a tendency to suggest a decision on an
improper basis.  Montgomery v. State, 810 S.W.2d 372, 395 (Tex. Crim. App. 1990)
(op. on reh’g).  Stated another way, “unfairly
prejudicial” evidence is evidence that “tends to have some adverse effect upon
a defendant beyond tending to prove the fact or issue that justifies its
admission into evidence.”  Casey v. State, 215 S.W.3d 870, 883
(Tex. Crim. App. 2007).  There is no
indication that was the case here, and Livingston does not advance such an
argument.  The evidence in question did
not require a significant amount of time to present, and there was no argument
it might impact the jury in some irrational, but nevertheless indelible
way.  See
Montgomery, 810 S.W.2d at 390.  The
witness tampering evidence was highly probative of Livingston’s consciousness
of guilt.  Livingston has failed to show
that the trial court’s admission of this evidence was an abuse of discretion.

            Further, and
to the extent Livingston complains that Rule 613 requires extrinsic evidence of
a prior inconsistent statement or bias to be independently corroborated, we
find no authority in support of this assertion.[10]  Under Rule 613(b), “[p]arties are allowed
great latitude to show ‘any fact which would or might tend to establish ill
feeling, bias, motive, and animus on the part of the witness.’”  Carpenter
v. State, 979 S.W.2d 633, 634 (Tex. Crim. App. 1998).  The Rule directs that before a witness may be
impeached by extrinsic evidence of a prior inconsistent statement or bias, he or
she must be informed of the statement’s content, the time and place at which it
was made, and the person to whom it was made. 
Tex. R. Evid. 613(b).  If the witness denies making the prior
statement, extrinsic evidence of same is admissible.  The State complied with the requirements of
Rule 613 by providing Livingston with the circumstances supporting its claim,
including the contents of the prior statement, together with the details of its
making.  Extrinsic evidence of the
alleged telephone calls was not admitted until after Livingston denied making
those calls.  We find no error in the
admission of extrinsic evidence of witness tampering under Rule 613.  Having so found, we overrule this appellate
point.

III.       Conclusion

 

            We affirm the judgment of the
trial court.

 

 

 

                                                                                    Jack
Carter

                                                                                    Justice

 

Date Submitted:          October
20, 2011        

Date Decided:             November
15, 2011

 

Do Not Publish           

 

            

 

 

            

            

            

            

 

            

 

 

 

 

 

            

            

            

 

            

 

 











[1]Tex. Penal Code Ann. § 30.02 (West
2011).  

 





[2]Livingston
is also critical of the trial court’s denial of his request to testify free of
his prior conviction, without providing an explanation for its decision.  While Theus
concluded that “[n]othing in Rule 609(a) requires the trial court to make
specific findings of fact and conclusions of law in weighing probative value
and prejudicial effect,” the better practice is to “enunciate on the record not
only whether the probative value of a conviction outweighs its prejudicial
effect, but also the rationale behind such a determination.”  Theus
v. State, 845 S.W.2d 874, 880 n.6 (Tex. Crim. App. 1992).   This Court is free to presume that the trial
court conducted the necessary balancing test, which need not be shown in the
record.  Bryant v. State, 997 S.W.2d 673, 676 (Tex. App.—Texarkana1999, no
pet.).





[3]Theus, 845 S.W.2d at 879 n.3.  

 





[4]Rule
609 provides that evidence of a prior conviction is not admissible if more than
ten years has passed from the date of conviction or release, subject to an
exception not applicable here.  Tex. R. Evid. 609(b).  Livingston’s prior conviction falls well
within that range.  





[5]Moton
testified that she was off work the day of the burglary and Livingston was at
home with her that day.  Moton further
testified that the car allegedly utilized in the burglary was at her residence
the entire day, except when she took the children to school and picked them up
in the afternoon.  





[6]Rule
613 provides, in pertinent part:

 

In impeaching a
witness by proof of circumstances or statements showing bias or interest on the
part of such witness, and before further cross-examination concerning, or
extrinsic evidence of, such bias or interest may be allowed, the circumstances
supporting such claim or the details of such statement, including the contents
and where, when and to whom made, must be made known to the witness, and the
witness must be given an opportunity to explain or to deny such circumstances
or statement.  If written, the writing
need not be shown to the witness at that time, but on request the same shall be
shown to opposing counsel.  If the
witness unequivocally admits such bias or interest, extrinsic evidence of same
shall not be admitted.  A party shall be
permitted to present evidence rebutting any evidence impeaching one of said
party’s witnesses on grounds of bias or interest.

 

Tex. R. Evid.
613(b).

 





[7]Leslie
explained that the only call from a private number he usually received was from
his father.  The call shows “Private
number, Pops.”  Leslie did not answer the
call merely showing “private number” because he did not know if it was a call
from his father.  Leslie called his
father the next morning to ask if he called on the previous evening, and learned
that he did not.  

 





[8]Livingston
concedes that “an attempt to tamper with a witness is evidence of ‘consciousness
of guilt,’” and such evidence has been held admissible pursuant to Rule 404(b)
of the Texas Rules of Evidence.  Johnson, 263 S.W.3d at 426 (citing Wilson v. State, 7 S.W.3d 136, 141 (Tex.
Crim. App. 1999)); see Tex. R. Evid. 404(b).  

 





[9]The
trial court responded to each of the jury’s questions by indicating that the
jury would have to make its decision based on the evidence introduced.  





[10]Here,
Livingston claims the only evidence of alleged witness tampering came from
Leslie.  Brower also testified of
Leslie’s report of tampering to him on the day of the alleged telephone
call.